## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **DATATEC SYSTEMS, INC.,** | **Case No. 04-13536 (          )** |
| **Debtor.** | |

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **DATATEC INDUSTRIES, INC.** | **Case No. 04-13537 (          )** |
| **Debtor.** | |

## MOTION OF DEBTORS FOR AN ORDER AUTHORIZING JOINT ADMINISTRATION OF CHAPTER 11 CASES PURSUANT TO RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Datatec Systems, Inc. and Datatec Industries, Inc., the above-captioned debtors and debtors-in-possession (each a "Debtor", and collectively, the "Debtors"), by and through their proposed undersigned attorneys, hereby move (the "Motion") the Court for the entry of an Order pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 1015-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the joint administration of the Debtors' related chapter 11 cases. In support of this Motion, the Debtors rely on the Affidavit of Richard Davis in Support of First Day Applications and Motions (the "Davis Affidavit"), which is incorporated herein by reference, and respectfully represent as follows:

### JURISDICTION

1.       This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Rule 1015(b) and Local Rule 1015-1.

## **BACKGROUND**

2.     On December 14, 2004 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

3.     No trustee, official committee or examiner has been appointed in the Debtors' chapter 11 cases.

4.     The Debtors are in the business of providing technology deployment services and licensing software tools to support technology providers and enterprises in the delivery of complex information technology solutions. The Debtors sell primarily to Fortune 500 enterprise customers operating multi-site, nationwide or broad regional footprints, in retail, financial services (including retail banking), healthcare industries and government agencies. The Debtors also provide services to technology vendors.

5.     Debtor Datatec Systems, Inc. was incorporated in the State of Delaware in January 1996. Its stock was traded on the NASDAQ SmallCap Market System under the symbol "DATC" until being delisted in March 2004. Since March 2004, the stock has been traded on the Pink Sheets quotation service. Datatec Systems, Inc. is the successor of various predecessor entities, providing technology deployment and related services for over 25 years. The Debtors' corporate headquarters are located in Alpharetta, Georgia, with their operational center located in Statesville, North Carolina.

6.      Debtor Datatec Industries, Inc. was incorporated in the State of New Jersey in April 1984. This is the entity through which all of the Debtors' business operations are conducted. All employees of the Debtors are employed by Datatec Industries, Inc.

7.      The Debtors' services include: (i) <u>configuration</u>: the process of "customizing" internetworking devices such as routers and switches, and computing devices such as servers and workstations to meet the specific needs of the user; (ii) <u>integration</u>: the process of integrating these hardware devices as well as integrating operational and application software on a network to ensure they are compatible with the physical configuration of the network and all legacy systems; (iii) <u>installation</u>: the physical process of installing technology on networks; and (iv) <u>service chain management</u>: enabling product or service providers to jointly manage the customer support relationship between themselves and all vendors supplying technology or services.

8.      The Debtors utilize internally developed web-enabled implementation tools that differentiate their deployment services. These tools, together with their proprietary processes, allow the Debtors to rapidly deliver high quality and cost effective large-scale technology deployment solutions to their clients, which is done primarily on a fixed time/fixed cost basis. The components of the Debtors' implementation model are made up of a combination of people, processes and technology that include:

> (i)    The utilization of eDeploy®, a web-based software tool that provides collaboration capabilities for remote planning and design, communication capabilities through fax, voice, data, or digital photographs and monitoring capabilities, ensures that best practices are employed and that mission critical milestones or timelines are escalated to supervisory levels if missed by the responsible parties.

> (ii)   The utilization of IW2000, a proprietary software tool that provides automation and mass customization in the configuration/integration of computing and internetworking devices as well as application and operational software. This automation significantly reduces labor costs through time savings as well as through reduced

technical skill level requirements.

      (iii) A staging and configuration center at which the Debtors carry out most of their complex integration and configuration processes. By conducting these activities at these staging centers, and utilizing, where applicable, their software tools, the Debtors are able to prepare and rollout project components so that they arrive at a customer site in a "plug and play" state, allowing minimal disruption to the customers' operations.

9.      As of December 1, 2004, the Debtors employed a total of approximately 250 employees, including approximately 136 salaried employees and approximately 114 union employees. The Debtors maintain a field deployment team of approximately 130 employees, supplemented by deployment partners throughout the country, which allows the Debtors to conduct multiple, simultaneous deployments across the United States and Canada of large-scale, complex, local and wide area networks incorporating a broad range of technology.

10.     During the telecommunications and IT expansion period of the late 1990's, the Debtors' operations grew rapidly without a successful strategy to monitor and integrate their operations. Since the close of the Debtors' fiscal year in April 2001, the Debtors have suffered in excess of $50 million in operational loses.

11.     In response to the downturn in the industry, beginning in late 2003, the Debtors began implementing a revised business plan designed to reduce costs, restructure management and consolidate operations. This revised business plan provided, among other things, (i) replacement of most key members of the Debtors' management team, including the CEO, the CFO and members of the board of directors; (ii) relocation of executive functions to Alpharetta, GA and operations functions to Statesville, NC; (iii) the closing of facilities in Fairfield, New Jersey; Columbus, Ohio; Dallas, Texas; Chicago, Illinois; and Boston, Massachusetts; (iv) the sale of the Debtors' Canadian call center subsidiary, Millennium Care, Inc.; and (v) a significant reduction in the size of their workforce.

### Financing

12.     On November 10, 2000, the Debtors and IBM Credit LLC ("IBM") entered into an Inventory and Working Capital Financing Agreement (the "Financing Agreement"), secured by, among other things, all of the Debtors' then existing and thereafter acquired inventory, equipment, accounts receivables, contract rights and general intangibles. The Debtors failed to meet certain financial covenants required under the Financing Agreement since the inception of the facility. Beginning in January 2004, IBM and the Debtors entered into a series of agreements whereby IBM agreed to forebear from taking action with respect to the Debtors' events of default through mutually agreed upon dates, although IBM did not waive or consent to any then existing defaults. In September 2004, IBM advised the Debtors that it was in default of financial covenants under the Financing Agreement (as amended in July 2004) and that any future advances to the Debtors would be made in IBM's discretion and that all proceeds received by the Debtors in certain accounts would be applied to the Debtors' obligations to IBM. The debt owed to IBM was approximately $28 million. Nonetheless, IBM continued to fund the Debtors.

13.     In July 2003, the Debtors issued $4.9 million principal amount of subordinated secured convertible notes (the "Notes") and warrants to purchase an aggregate of 875,000 shares of the Debtors' common stock, pursuant to a note purchase agreement between the Debtors and six funds managed by The Palladin Group L.P. ("Palladin"). The Debtors are currently in default on their obligations to repay the Notes because they failed to make required principal and interest payments beginning in January 2004. Under the terms of the Notes, the Debtors were required to begin making such payments in January 2004 in sixteen equal monthly payments ending April 2005. In May 2004, the Debtors made a payment of approximately $800,000 on account of the

Notes. Accordingly, the principal amount of obligations that was due and owing on the Notes was approximately $4.1 million.

14.    On December 8, 2004, IBM and Palladin sold and assigned their secured claims/debt to Eagle Acquisition Partners, Inc. ("Eagle"). Eagle has agreed and consented to the use of its cash collateral by the Debtors. Eagle is an investment group comprised of several individuals and institutions, led by Raul Pupo. Mr. Pupo was, until December 8, 2004, the CEO of the Debtor, and resigned upon Eagle's acquisition of the secured claims of IBM and Palladin.

15.    On December 13, 2004, Alpine Associates, LP ("Alpine Associates") loaned the Debtors $585,000 pursuant to a note and security agreement. The Debtors' pre-petition indebtedness to Alpine Associates will be made a part of the DIP financing agreement and repaid by the Debtors post-petition pursuant to the DIP Loan Agreement. The loan from Alpine Associates was made in anticipation of a DIP order to facilitate the Chapter 11 filings. The Debtors submit that such roll-up is reasonable and will benefit the estate by avoiding the imposition of default interest thereon. In addition, Alpine Associates has an option to acquire five (5%) percent of the equity of Eagle.

16.    Despite the Debtors' efforts to cut costs and consolidate operations, the Debtors' available liquidity was insufficient to fund current operations. The Debtors determined that Chapter 11 filings were the best means available to maximize the value of the Debtors' estates.

17.    The Debtors have further determined that it is in the best interests of each of their estates to arrange for the sale of their businesses and assets. As part of this process, the Debtors intend to seek to ensure that the value of the Debtors' estates are maximized.

**RELIEF REQUESTED**

18.     By this Motion, the Debtors seek entry of an Order, pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1, directing the joint administration of their respective chapter 11 bankruptcy cases.   The Debtors seek the entry of an order consolidating these cases for administrative purposes only and directing that all docket entries in these bankruptcy cases be entered only on the docket for Debtor Datatec Systems, Inc.

19.     Datatec Systems, Inc. and its wholly-owned subsidiary, Datatec Industries, Inc. are "affiliates" as that term is defined in section 101(2) of the Bankruptcy Code.   Bankruptcy Rule 1015(b) provides that, if two or more petitions are pending in the same court by or against a debtor and an affiliate, the Court may order the joint administration of the estates of the debtor and its affiliates. See Bankruptcy Rule 1015(b).

20.     In addition, Local Rule 1015-1 provides in relevant part:

> If two (2) or more petitions are pending in the same Court by or against . . . a debtor and an affiliate, the Court may order a joint administration of the estates, without notice or hearing.  An order of joint administration may be entered upon the filing of a motion for joint administration, together with an affidavit or verification, which establishes that the joint administration of the respective debtors' estates is warranted, will ease the administrative burden for the Court and the parties and protects creditors of the different estates against potential conflicts of interest.

21.     Pursuant to Local Rule 1015-1, the Debtors have filed the Davis Declaration contemporaneously herewith.   The Davis Declaration establishes that joint administration of these chapter 11 cases (a) is warranted because the Debtors' financial affairs and business operations are closely related; (b) will ease the administrative burden on the Court and the parties; and (c) protects creditors of different estates against potential conflicts of interest.

22.     Moreover, the joint administration of the Debtors' chapter 11 cases will permit the Clerk of the Court to utilize a single general docket for these cases and combine notices to

creditors of the Debtors' respective estates and other parties in interest. The Debtors anticipate

that numerous notices, applications, motions, other pleadings and orders in these cases will affect

both of the Debtors. Joint administration will permit counsel for all parties in interest to include

the Debtors' respective cases in a single caption on the numerous documents that will be filed

and served in these cases. Joint administration also will enable parties in interest in both of the

above-captioned chapter 11 cases to be apprised of the various matters before the Court in all of

these cases.

23.     Accordingly, in order to expedite the efficient administration of the Debtors'

bankruptcy cases and to avoid the preparation and filing of multiple duplicative pleadings and

other documents, it is respectfully submitted that joint administration, pursuant to Bankruptcy

Rule 1015(b) and Local Rule 1015-1, is both appropriate and warranted under the circumstances.

24.     The Debtors request that the official caption to be used by all parties in all

pleadings in the jointly administered cases be established as follows:

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **In re:** | : | |
| | : | |
| **DATATEC SYSTEMS, INC. and** | : | **Chapter 11** |
| **DATATEC INDUSTRIES, INC.,** | : | |
| | : | **Case No. 04-_____ (     )** |
| | : | |
| | : | **Jointly Administered** |
| **Debtors.** | : | |

25.     The Debtors also seek the Court's direction that a notation substantially similar to

the following notation be entered in the docket in each Debtor's case to reflect the joint

administration of these cases:

An Order has been entered in this case directing the procedural
consolidation and joint administration of the chapter 11 cases of

> Datatec Systems, Inc. and certain of its affiliates, and the docket in
> Case No. 04-_____ should be consulted for all matters
> affecting this case.

26.    An order of joint administration relates to the routine administration of a case and may be entered by the Court in its sole discretion on an ex parte basis. See Del. Bankr. LR 1015-1. Moreover, the ex parte entry of joint administration orders in multiple related cases such as these is common and generally non-controversial in this District and elsewhere.[1]

## NOTICE, PRIOR MOTION AND WAIVER OF BRIEF

27.    No trustee, examiner, or creditors' committee has been appointed in the Debtors' chapter 11 cases. Notice of this Motion has been given to (i) the Office of the United States Trustee for the District of Delaware, (ii) counsel to the Debtors' secured lenders; (iii) counsel to the Debtors' proposed postpetition lender and (iv) the creditors identified on the Debtors' consolidated list of their twenty (20) largest unsecured creditors. The Debtors submit that no other or further notice need be given.

---

[1]    See, e.g., In re USG Corp., No. 01-2094 (RJN) (D. Del. June 25, 2001) (Judge Farnan) (order directing joint administration of chapter 11 cases); In re Pillowtex, Inc., No. 00-4211 (PJW) (D. Del. Nov. 14, 2000) (Judge Robinson) (same); In re Purina Mills, Inc., No. 99-3938 (PJW) (D. Del. Oct. 29, 1999) (Judge Robinson) (same); In re Loewen Group Int'l, Inc., No. 99-1244 (PJW) (D. Del. June 1, 1999) (Judge Farnan) (same); In re LTWC Corp., No. 03-12272 (PJW) (Bankr. D. Del. Aug. 1, 2003) (same); In re Pillowtex Corp., No. 03-12339 (PJW) (Bankr. D. Del. July 31, 2003) (same); In re Seitel, Inc., No. 03-12227 (PJW) (Bankr. D. Del. July 25, 2003) (same); In re Slater Steel U.S., Inc., No. 03-11639 (MFW) (Bankr. D. Del. June 3, 2003) (same); In re HQ Global Holdings, Inc., No. 02-10760 (MFW) (Bankr. D. Del. Mar. 14, 2002) (same); In re Kaiser Aluminum Corp., No. 02-10429 (JKF) (Bankr. D. Del. Feb. 13, 2002) (Judge Katz) (same); In re Nationsrent, Inc., No. 01-11628 (PJW) (Bankr. D. Del. Dec. 18, 2001) (same); In re Burlington Indus., Inc., No. 01-11282 (RJN) (Bankr. D. Del. Nov. 15, 2001) (Judge Walsh) (same); In re Borden Chems. & Plastics Operating Ltd. P'ship, No. 01-1268 (PJW) (Bankr. D. Del. Apr. 5, 2001) (Judge Newsome) (same); In re The Imperial Home Decor Group Inc., No. 00-19 (MFW) (Bankr. D. Del. Jan. 5, 2000) (same); In re Montgomery Ward Holding Corp., No. 97-1409 (PJW) (Bankr. D. Del. July 8, 1997) (same); In re MobileMedia Communications, Inc., No. 97-174 (PJW) (Bankr. D. Del. Jan. 30, 1997) (same); In re Fruehauf Trailer Corp., No. 96-1563 (PJW) (Bankr. D. Del. Oct. 8, 1996) (same); In re Edison Bros. Stores, Inc., No. 95-1354 (PJW) (Bankr. D. Del. Nov. 3, 1995) (same); accord In re Laidlaw USA, Inc., Nos. 01-14099 K through 01-14104 K (Bankr. W.D.N.Y. June 29, 2001) (same); In re LTV Steel Co., Inc., No. 00-43866 Bankr. N.D. Ohio Dec. 29, 2000) (same); In re Pittsburg-Canfield Corp., No. 00-43394 (Bankr. N.D. Ohio Nov. 16, 2000) (same); In re Phar-Mor, Inc., Nos. 92-41599 through 92-41614 (Bankr. N.D. Ohio Aug. 17, 1992) (same) Because of the voluminous nature of these unreported orders, they are not attached to this Motion. Copies of these unreported orders are available upon request from the Debtors' counsel.

28.    No previous application for the relief sought in this Motion has been made to this or any other Court.

29.    The Debtors submit that the Motion does not present any novel issues of law requiring the citation to any authority other than that referred to above and, accordingly, no brief is necessary.


[Remainder of Page Intentionally Left Blank]

WHEREFORE, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto as Exhibit A, directing the joint administration of the Debtors' cases for administrative purposes only pursuant to Bankruptcy Rule 1015(b) and Local Rule 1015-1, and granting such other and further relief as may be just and proper.

Dated: December 14, 2004
      Wilmington, Delaware

Respectfully submitted,

John H. Knight (No. 3848)
Michael J. Merchant (No. 3854)
Karen M. McKinley (No. 4372)
Jason M. Madron (No. 4431)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware  19899
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701

- and -

Kenneth A. Rosen (KR 4963)
Bruce D. Buechler (BB 0324)
Mary E. Seymour (MS 3950)
LOWENSTEIN SANDLER PC
65 Livingston Avenue and
6 Becker Farm Road
Roseland, NJ  07068
Telephone:  (973) 597-2500
Facsimile:  (973) 597-2400

PROPOSED ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **DATATEC SYSTEMS, INC.,** | **Case No. 04-_____ (        )** |
| **Debtor.** | |
| **In re:** | **Chapter 11** |
| **DATATEC INDUSTRIES, INC.** | **Case No. 04-_____ (        )** |
| **Debtor.** | |

## ORDER DIRECTING JOINT ADMINISTRATION OF
## THE DEBTORS' CHAPTER 11 CASES PURSUANT TO
## RULE 1015(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Upon the motion (the "Motion") of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), seeking entry of an order, pursuant to Rule 1015 of the Federal Rules of Bankruptcy Procedure and Local Rule 1015-1, directing the joint administration of the Debtors' chapter 11 cases solely for procedural purposes; and upon consideration of the Affidavit of Richard Davis in Support of First Day Applications and Motions; the Court finding that (i) it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (iii) the joint administration of the Debtors' chapter 11 cases is appropriate pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedures and Local Rule 1015-1 and (iv) proper and adequate notice of the Motion has been given and that no other or further notice is necessary, after due deliberation thereon, good and sufficient cause exists for the granting of the relief as set forth herein.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.    The above-captioned chapter 11 cases are consolidated for procedural purposes only and shall be jointly administered by the Court.  Nothing contained in this Order shall be deemed or construed as directing or otherwise effecting the substantive consolidation of the Debtors' respective chapter 11 cases, and shall be without prejudice to the rights of the Debtors to seek entry of an order substantively consolidating their respective cases.

3.    The caption for any matter coming before this Court that relates to each of the Debtors' respective chapter 11 cases shall read as follows:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **In re:** : | |
| : | |
| **DATATEC SYSTEMS, INC. and** : | **Chapter 11** |
| **DATATEC INDUSTRIES, INC.,** : | |
| : | **Case No. 04-_____ (    )** |
| : | |
| : | **Jointly Administered** |
| **Debtors.** : | |

4.    All original docket entries shall be made on the docket of Datatec Systems, Inc. and a docket entry shall be made on the docket in the case of debtor Datatec Industries, Inc. which shall read substantially as follows:

An Order has been entered in this case directing the procedural consolidation and joint administration of the chapter 11 case of Datatec Systems, Inc. and its affiliate, and the docket in Case No. 04-____ should be consulted for all matters affecting this case.

5.    The Debtors are hereby authorized and empowered to take such steps and perform such acts as may be necessary to implement and effectuate the terms of this Order.

6.     This Court shall retain jurisdiction over any and all issues arising from or related to the implementation and interpretation of this Order.

Dated: December ___, 2004
          Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE